On our docket, also to be argued, is Daniel Masters as petitioner versus the United States Securities and Exchange Commission. And for Petitioner, we have Mr. Masters, Pro Se. Thank you, Your Honor. May it please the Court, I am Daniel Masters, Petitioner in this matter. I believe that this case comes down essentially to one of massive overreach. It was overreach on the part of the SEC when they demanded initially that the case be withdrawn. This was a case in bankruptcy court. It was a Chapter 11 case, Worthington Energy, and Worthington had every right to have its day in court. Did that overreach somehow coerce you in entering into the consent decree and indeed soliciting it? Were you coerced into resolving the case the way you did? I was not coerced, Your Honor. I would say this. I entered the consent decree, and I think that is the essence of your question, for two reasons. One is the cost of ongoing litigation. I had already spent a good sum of money getting to the point where I was, and I was informed that to take this case through trial would cost me another $200,000 versus a $50,000 settlement. I was also told that after one year I would be able to apply to be reinstated to practice before the SEC and to have the other sanctions lifted. That information, while technically correct, as the SEC notes in its brief, was practically incorrect, because in the 88-year history of the SEC, as I found out a year later, they have never lifted the sanctions on an attorney in my position. So I entered into that consent with the understanding that I was facing a $50,000 fine and one year in a penalty box versus $200,000 to go forward. Had I understood properly that that one year in the penalty box was practically a lifetime in the penalty box, I would not have consented. The argument to the SEC, I don't remember seeing it in their opinion. I'm sorry, Your Honor. Could you repeat? You make the argument that you made in response to Judge Selna's question that you were misled about how long you would be barred from practice. Did you make that argument to the SEC? I did not make that argument to the SEC. I made my argument to the SEC based on that information, and that information was that I could reapply for admission at the end of one year. That was the basis for making my application to the SEC. So rather than making that an argument, it was the basis for the argument. So I would also argue that the SEC not only overstepped or overreached in insisting that the case be withdrawn from the proper forum, a forum, incidentally, in which the SEC could have made all of the arguments that it subsequently did. It could have said that there was inadequate information in the disclosure statement. It could have said that the plan was unconfirmable. It could have said that the case should be converted to a Chapter 7 from a Chapter 11. It did none of these things. Instead, it demanded that the case be withdrawn in total. I also believe that there was overreach in asserting that the SEC had subject matter jurisdiction in this case. Subject matter jurisdiction under the statutes they cite requires three things. But you conceded jurisdiction in the consent decree, did you not? I did, Your Honor. I mean, you're telling us from a practical matter you're going to spend $50,000 rather than $200,000 to buy your piece. Why shouldn't we hold you to that bargain? I believe, first of all, that, well, as I said to start with, that bargain was made under erroneous, based on erroneous information. Which you didn't present to the SEC. You told us about that representation being a motivation, but you didn't tell us that you made that argument to the SEC. True? That is correct. I made my petition to the SEC based on the fact that the SEC, as they concede in their brief, allows for one to be reinstated after one year. So I made it based on that. I would also say that, as I started to say, there are elements involved, three elements, in any subject matter jurisdiction. Now, yes, I conceded that subject matter jurisdiction, but the Supreme Court teaches us that one can never waive subject matter jurisdiction. So I believe that that waiver was an invalid waiver. The subject matter jurisdiction here requires a false statement in connection with... Wait, wait. Could I just step back a moment? Yes. I don't think that there is, because the SEC is not a court, there's no issue with Article III jurisdiction. So you're really talking about statutory jurisdiction, as I read your briefs. SEC does not have to have Article III jurisdiction, it's not a federal court. Isn't that right? I'm not understanding why SEC would need Article III jurisdiction to decide a case. Are you talking about statutory? You're saying it lacks statutory jurisdiction? I'm talking about the statutory jurisdiction, the statutes that the SEC cites. Okay, and that could be waived, of course, which you did in the consent order. I'm sorry, Your Honor? So statutory jurisdiction can be waived, as you did in the consent order. Okay. I believe that the SEC teaches us, Your Honor, that subject matter jurisdiction can never be waived. And I believe that they did not distinguish there whether it is under Article III or not. Indeed, the bankruptcy court that this was in was in Article I. So I don't believe that we are bound to separate, to create subject matter jurisdiction there. Clearly, the statements that the SEC alleges were false were not false. I go through those in good detail in the briefs, but they allege three statements. Every one of them was, in fact, true. But the jurisdictional issue doesn't go to the truth of the facts. The jurisdictional issue goes to the fact that there were securities involved in the plan that you presented. That's the jurisdictional issue. The jurisdiction? Yes, Your Honor, that is the jurisdictional issue. I'm sorry? Well, wasn't the SEC at least colorably correct in asserting in its decision that it had jurisdiction by virtue of securities being part of the plan? But there was a proposal to issue securities. Right. But this was in bankruptcy court. The SEC had the ability to be heard in that court and to make its objections to that in the court. And the SEC has, presumably, the ability to ask whether false statements were made or whether they were made in connection with an offer or sale. They were not. The three statements pointed to were, in fact, all true. There were no false statements there. Pinter Vidal teaches us that there was no offer because an offer requires some kind of financial interest in the security, either as a principal seller or as something like a stockbroker who would receive a commission. And specifically, Pinter Vidal says this should not apply to attorneys or accountants in the ordinary course of preparing their documentation. So there was no offer. Clearly, there was no sale because there was no sale of Smart Tech, which is the company about which false statements were alleged. Counsel? Yes. Judge Gould, I want to interject a question, if I may, please. Certainly. It doesn't go to the merits of truth or falsity of your statements. My question is simply this. You entered the consent decree. You said earlier on the premise that you would pay $50,000 fine and be in the penalty box for a period of about a year. And then after that, you learned that the SEC in their history never believed people of these kinds of penalties in a year. Did you file like some sort of meeting with the SEC asking it to to release you from that penalty and giving the reason that you gave us that that you had been told it would be a year? I'm sorry, Your Honor. I missed the very last part of that question. Did you ever file a petition or some sort of pleading with the SEC asking it to relieve you of the penalty and put you back in a complex where you could practice security? I did file a petition with the SEC, Your Honor. And that motion that was filed with the SEC was denied as the basis for this appeal. And I believe that in this appeal, one of the things, because in their order denying that, the SEC went back to all of these questions of whether there was a false statement, whether there was a sale in connection with securities and so on and so forth. The SEC has basically opened up not only that question of the petition, but the original issue, which was, was there any such malfeasance that would justify their sanctions? And I believe that there was none, and I believe that Rule 60b-4 of the Federal Rules of Civil Procedure, which allow for a final judgment if it is on these grounds, to be overturned. Because, as noted in Surrey v. the SEC, such motions, such consents should be upheld unless they are unwarranted in law or unjustified in fact. And I would say that this is most certainly unjustified in fact and unwarranted under the law. Mr. Masters, thank you, but would you like to reserve some time for rebuttal? Thank you, Your Honor. Okay, then we'll therefore proceed to argument by the SEC. May it please the Court. Eric Riker on behalf of the Securities and Exchange Commission. Masters, an attorney who was represented by counsel, knowingly and voluntarily consented to entry of an order, finding that he committed securities fraud, and he agreed to various penalties, including a permanent suspension from appearing and practicing before the Commission as an attorney. Approximately a year and a half later, he had a change of heart and filed a motion to vacate the consent order or in the alternative to reinstate him to appear and practice before the Commission. The Commission acted well within its discretion in finding that Masters failed to show compelling circumstances the relevant standard to vacate the order and similarly failed to show good cause. Do the compelling circumstances have to be new facts or new law, or can he revert to the underlying record for compelling circumstances? There has to be either new facts, new law, an unintended consequence of the agreement that was not foreseen. There's not an exclusive list, but Mr. Masters, in his briefing in here today in court, does not even attempt to address the standard there. He's simply trying to re-argue the merits of the case, that he had an opportunity to do so, but he chose to settle instead, and he should be held to that settlement. He mentioned this morning that one of the first reasons he gave was that it would save him money. That was a calculated decision on his part, and a deal is a deal. Once he made that determination, there are also other benefits. One of the other benefits is a certainty of the punishment. Also, with the consent order, the facts were laid out in a relatively high level. If he had litigated, there would have been further discovery, a much more detailed finding of facts against him. That might have had reciprocal consequences with the bar. Your Honor? Oh, sorry. Judge Gould, did you want to interject? My apologies. This is nothing more than a case of buyer's remorse. When it was in his interest, financial and otherwise, to settle, he settled, and when his interest changed, he tried to come back. But he can't back out of his agreement merely when it is convenient for him. Before I get into some of my other arguments, I want to address a few things that came up from Mr. Masters. He says repeatedly that we demanded it be withdrawn, the petition be withdrawn from the bankruptcy court. That's not true. If you look at the record, Excerpt of Record 102, we told him, and this is in a letter or an email, you have a plan on file, and we are on record that we will object to it. The only way to resolve the objection is to convert the case to Chapter 7. He could have continued through. The commission does not have the ability to demand him to withdraw anything from the bankruptcy court.  He mentioned the other concern about he was told, supposedly, there's nothing in the record to support this, that it would only be a one-year timeout. That came, again, assuming it occurred, from his own counsel. That did not come from anyone at the commission, and even if his counsel gave him poor advice, that's between him and his counsel. That does not require the commission to change its settlement or to vacate the order. Moreover, he should have realized, he and or his attorney, that that was inaccurate and bad advice. Again, Mr. Masters is an attorney himself because case law that does exist, and primarily the two Wolf decisions from the commission, show that it was unreasonable to expect to come back in one year, and more importantly shows that it is simply not true that the commission has never let anyone back. Now, Wolf is an accountant, not an attorney, but it is the exact same Rule 102e and the exact same standards to judge when someone has brought in, whether someone should be... Has an attorney ever been reinstated? The commission has never been faced with this, so the commission has not denied an attorney reinstatement, just as the commission has not granted. There have been very few attorneys who have sought reinstatement, and none have actually proceeded to a commission decision on the issue. So, but again, the standard would be the exact same, it's the same good cause standard, and as the decision in Wolf, the two decisions in Wolf, Wolf applied for reinstatement approximately two years after he had been suspended, and even though he acknowledged his wrongdoing, he had been very cooperative and helpful to the commission and other government authorities in other cases, had taken continuing accounting, education, and other rehabilitative efforts, even with all of these steps, the commission said, two years simply has not been enough to show that you have rehabilitated yourself to the degree that we feel comfortable permitting you back to practice before the commission. When he reapplied, I believe six years later, the commission reevaluated those factors and did, in fact, reinstate him. So it is simply not true that the commission has not reinstated people in the exact same position that Mr. Masters finds himself in. I do not believe the facts are relevant at all because of the consent order and other factors, but very briefly, they were false. Mr. Masters, in his brief, argues that the commission is trying to hold him responsible for a price drop in Smart Tech stock. That's simply not true. The commission, the false statement was that Smart Tech ever owned airborne stock. Smart Tech had no stock, so it didn't matter what the price was, and for points in the record that, I will point you to the supplemental record exhibits. I believe it's specifically 39. Mr. Masters took the fifth when asked whether he knew that Smart Tech was never capitalized with airborne shares, and the commission found that Smart Tech had only $10,000. That was the $10,000 cash. So it didn't matter whether it was $500,000 in stock, $300,000, or $100,000 because the company owned no stock at all. Unless it interests the court, I don't want to spend more time on the facts, but I would encourage you, if it is of any interest, one, I'm happy to address it, but also to look at the various other things that Mr. Masters took the fifth on, and again, as a civil proceeding, the commission is allowed to take adverse inferences based on that. How significant in the reapplication is it that he never admitted his wrongful conduct? That is certainly a factor. Would that distinguish other cases where reinstatement has been considered? Yes, absolutely, and the commission made very clear in the Wolf decisions that that was a prominent factor in their decision to allow Wolf back in. He unambiguously acknowledged the wrongdoing and the severity of the wrongdoing of his conduct, but even though he did, after two years, the commission didn't let him back, but after six years, that was a key factor. I do want to briefly address why we shouldn't even get into any of the things we've discussed so far. If you look at his offer of settlement, it's the supplemental excerpts of record 25 through 30. That's all we need to resolve this case. First, Masters waived his right to further proceedings before the commission, so that alone was valid grounds for the commission not even getting into any of the merits. Two, he waived his right to seek judicial review by any court, and this court in Harris and other cases has upheld valid knowing judicial appellate waivers. Third, he consented to the commission's factual findings and agreed not to mount legal challenges disputing those findings, and, of course, the entire appeal here is predicated on disputing those findings. And finally, as Your Honors mentioned earlier, he admitted to the jurisdiction of the commission and over the matter set forth, and as the official case that we cite in our brief shows, that when there was a voluntary settlement and the terms of the settlement were consistent with the jurisdictional finding, that is enough. Moreover, on jurisdiction. Can I ask? Oh, I'm sorry. No, no, please, please. Are we limited, as in most administrative reviews of administrative agency decisions, are we limited to the reasons given by the SEC in its opinion? No. I mean, if the court believes that there are other grounds to affirm, I don't believe you are. So normally we look at SEC v. Chainery and say we can only agree with or uphold an agency decision. Grounds or the reasoning it provided, is that not applicable here? I'm sorry. Could you repeat that? I said normally we interpret SEC v. Chainery to say that we can uphold an agency decision only based on the reasons that it gave. So I was wondering how that affects our analysis here. I'm not familiar with that case specifically. I would say... Counsel? Yes. I think Judge Akut is referring to a case some people pronounce as Chainery. C-H-E-N-E-R-Y. Unfortunately, I appreciate that. That does not help my familiarity with that particular case, but I would say whether the court views there are other grounds or looking just at the grounds that the Commission gave, one, the Commission said he waived his right to proceed further. Two, on the substance, it is clear that the Commission had jurisdiction. Congress charges the Commission with enforcing the securities laws. 17A1A3 of the Securities Act, 10B5 of the Exchange Act, are the fundamental anti-fraud provisions of the federal securities laws. That is part and parcel of what the Commission does. This is not a situation where the Commission decided to try to enforce the environmental laws or something outside of its bailiwick. This was front and center of what the Commission is supposed to do.  Yes. Let me ask you a question, please. So, concerning Mr. Masters' intentions, he was told, let's say by his counsel or someone else, that the suspension should only last a year. My question is, what was the precise language in the consent order, if any, that dealt with the duration of the suspension? The order simply says he is barred from appearing and practicing before the Commission. There is no time limit. It is an indefinite permanent suspension, and that contrasts with there are settlements that are generally in the two- to five-year range. But the Commission did not, and the Commission probably would not have agreed to settle absent a permanent bar. Now, again, even though I refer to it as permanent, Mr. Masters does have the ability to reapply, and he did, but there is absolutely no guarantee or obligation to reinstate him, particularly to reinstate him so quickly. Again, there would be nothing, just as Wolfe reapplied later, there's nothing that prevents Masters from applying again. But he had no basis to believe, based on the order, that he would have been reinstated necessarily after a year. Did his waiver still leave him room to reapply? Yes. He is not—he is waived from vacating, moving to vacate the judgment. But in terms of reinstatement, yes, Rule 102 is clear. So he was permitted to bring his attempt at reinstatement. The waiver is for—and again, when you look at what counts as good cause for reinstatement, it's the seriousness of the misconduct, the length of time that is passed without further misconduct, acknowledgment of wrongdoing, rehabilitative efforts, such as cooperating with the government. Those are all factors that the Commission looks at, and none of them Masters has been able to present. Similarly, again, when it comes to compelling circumstances to vacate the order, Mr. Masters is simply trying to relitigate the merits of the case against him, and he doesn't have that opportunity. If he wanted to do that, he should have done that at the time. I do want to very briefly mention 60B4. We don't believe it applies here because there's no corresponding Commission provision. It's a collateral proceeding under Fishel, and the court shouldn't consider it. He admitted to jurisdiction. But even if we get to 60B4, if the court thinks that it needs to look at it, as I believe Judge Selna alluded, as long as there is a colorable claim to jurisdiction, 60B4 is no help. As this Court's decision in Huffman v. Paluto, 928 F. 3rd, 1147, Judge Ikuda, I believe you were on that panel,  and there's no arguable basis that 60B4 could help. And his admission to jurisdiction alone provided a reasonable basis, and for that I'll point you to Central Vermont Public Services Court v. Herbert, 341 F. 3rd, 186 from the Second Circuit. And again, this was a securities fraud case. This is what our agency does. We clearly have jurisdiction. What Mr. Masters is trying to argue is the merits. We have he's saying, and I quote from the very end of his brief, lacking a false or misleading statement by Masters, the SEC lacks subject matter jurisdiction. He's wrong. The SEC would have to show a false statement to prevail on the merits of the claim, not to establish the jurisdiction to hear the claim. Under Masters' logic, the failure to prove fraud would strip the court of jurisdiction, and you could never have a defense verdict in a securities case, and that's plainly not the law. We had jurisdiction here, and even if you looked at the facts, he did commit the violations in question, but we shouldn't even get to that point. And unless the court has further questions, I'll submit. Thank you for your argument. Thank you, Your Honors. I think Mr. Masters is getting some time from us for argument for rebuttal. Thank you, Your Honor. Let's set the clock at two minutes. Thank you, Your Honor. One of the things that I found surprising in counsel's argument was the statement that the assets simply didn't exist. You'll find in the excerpts of record, unfortunately I can't quote the page, a copy of the assignment document by which 250,000 shares, the stock, was assigned to the company. That assignment document is in there, came to me, because I specifically requested it. When the company provided its financial statements, there was some question in my mind as to whether the financial statements were accurate, so I asked for backup information. I questioned this, I received it, and you will find the assignment document there. So I certainly believe that the assets existed at the time we were going through this case. I would also say that the whole question of my admission, my waiver, my consent, was based on the statement that I neither admitted nor denied the findings. Now, yes, I'm trying to deny those findings today, but the important thing is that they were never admitted, and I believe that it is appropriate to look back at those findings in order to ask the question of whether there was jurisdiction. And if there was not jurisdiction, I believe it is appropriate under Rule 60B to find that the entire order was void and to vacate it, or in the alternative, to have me reinstated to practice. Are there any other questions, Your Honors? I'll submit on that. Thank you, Counsel. Very interesting case. At this point, Masters v. United States Securities Exchange Commission shall be submitted, and the parties will hear from the panel in due course about our decision. I want to thank Mr. Masters and Mr. Riker for their excellent arguments. Now let's go to the last case on our docket, is Natural Resources. We're going to take a break here? We're going to take a 10-minute break now before hearing that case. All rise.
judges: GOULD, IKUTA, Selna